## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

GILBERT BACA,

   **Plaintiff,**

**vs.**            **No.  09cv1088 DJS**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

   **Defendant.**

### MEMORANDUM OPINION

**THIS MATTER** is before the Court on Plaintiff's (Baca's) Motion to Reverse or Remand the Administrative Agency Decision **[Doc. No. 20]**, filed June 17, 2010, and fully briefed on October 7, 2010.  On June 1, 2009, the Commissioner of Social Security issued a final decision denying Baca's claim for disability insurance benefits.  Baca seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).  Having considered the arguments, pleadings, administrative record, relevant law, and being otherwise fully informed, the Court finds that the motion to reverse and remand is well taken and will be **GRANTED**.

### I.  Factual and Procedural Background

Baca, now fifty-nine years old (D.O.B. February 5, 1951), filed his application for disability insurance benefits on March 5, 2007, alleging disability since July 1, 2006 (Tr. 15), due to degenerative joint disease (bilateral knees), Type II diabetes, hypertension, and obesity. (Tr. 17).  Baca has a high school education and past relevant work as a machinist.  Tr.18.  Baca worked as a machinist for General Electric for over 27 years before having to retire due to his medical impairments making it difficult for him to continue performing his job.  Tr. 36.  On June

1, 2009, the Administrative Law Judge (ALJ) denied benefits.  At step four of the sequential evaluation process, the ALJ found Baca could not perform his past relevant work as a machinist, which is defined as medium level work.  Nonetheless, the ALJ found Baca retained the residual functional capacity (RFC) to perform "a limited range of medium work."  Tr. 22.

At step five, the ALJ, relying on the vocational expert's (VE) opinion, found Baca could perform two other jobs described as medium level work by the VE.  The VE opined Baca could perform the jobs of linen room attendant and hand packer.  The ALJ further found Baca's "statements concerning the intensity, persistence and limiting effects of [his alleged symptoms] were not credible."  Tr. 20.

On October 9, 2009, the Appeals Council denied Baca's request for review of the ALJ's decision.  Tr. 1.  Hence, the decision of the ALJ became the final decision of the Commissioner for judicial review purposes.  Baca seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

## II.  Standard of Review

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. *Hamilton v. Secretary of Health and Human Servs.,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).  "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  Moreover, "all of the ALJ's required findings must be supported by substantial evidence," *Haddock v. Apfel,* 196 F.3d 1084, 1088 (10th Cir. 1999), and all of the relevant

medical evidence of record must be considered in making those findings, *see Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989).  "[I]n addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996).  Therefore, while the Court does not reweigh the evidence or try the issues de novo, *see Sisco v. United States Dep't of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993), the Court must meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings, in order to determine if the substantiality test has been met. *See Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).

### III.  Discussion

In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing 42 U.S.C. §423(d)(1)(A)).  The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. 20 C.F.R. § 404.1520 (a-f).  The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled. *Thompson*, 987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show he is not engaged in substantial gainful employment, he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities, and his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or he is unable to perform work he had done in the past. 20

C.F.R. §§ 404.1520 and 416.920.  At the fifth step of the evaluation, the burden of proof shifts to

the Commissioner to show the claimant is able to perform other substantial gainful activity

considering his residual functional capacity, age, education, and prior work experience.  *Id.*

In support of his motion to reverse and remand, Baca makes the following arguments: (1)

the ALJ erred in making inconsistent findings at step five; (2) the ALJ erred in basing his

decision on inaccurate vocational expert testimony; (3) the ALJ erred in his credibility findings;

(4) the ALJ erred in application of the Medical-Vocational Guidelines (the grids); and (5) the

ALJ erred in not finding him disabled as a matter of law.

At step four of the sequential evaluation process, the ALJ noted in his decision:

> The vocational expert classified the claimant's past relevant work as machinist, DOT #603.380-010, skilled, medium exertional level as customarily performed in the national economy, and at a heavy exertional level as actually performed by the claimant.  The vocational expert testified that the **claimant is unable to perform past relevant work, and, simply stated, I agree**.

Tr. 21 (emphasis added).  The ALJ also found Baca was an individual of "advanced age," with a

high school education, and able to communicate in English.  *Id.*  As to transferability of job

skills, the ALJ noted:

> Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

> Claimant's counsel made an objection stating that unskilled work, could not be considered at the claimant's age and a finding of transferable skills would be required.  Counsel provided a written argument post hearing (Exhibit 14E).  Pursuant to 20 CFR 404.1568(d)(4) if a claimant is of advanced age (age 55 or older), and has a severe impairment(s) that limits them to ***sedentary*** or ***light work***, we will find that the claimant cannot make an adjustment to other work unless they have skills that can transfer to other skilled or semiskilled work.  As I find the claimant is capable of a limited range of medium work, which by definition is greater than both sedentary and light work, I find transferability is not material pursuant to the above cited regulation.

4

Tr. 22.  Thus, only if the ALJ found that Baca retained the RFC to perform medium work could the ALJ find transferability of skills not material.  Accordingly, the ALJ found Baca retained the RFC to perform a limited range of medium work.

However, Baca contends the ALJ's finding at step four that he cannot perform his past relevant work, which is defined as medium exertional level work, is inconsistent with the ALJ's finding at step five that he could perform some other unskilled medium level work.  The Court agrees.

At step four, RFC should be expressed in terms of functional limitations to determine whether those limitations prevent a claimant from performing his past relevant work. The claimant  must demonstrate by pointing to affirmative medical evidence that his medically determinable impairments produce limitations which prevent him from performing his past relevant work.  The burden then shifts to the Commissioner to point to affirmative medical evidence to establish that claimant can perform at an exertional level below that required by his past relevant work, and that there are a significant number of jobs in the national economy which the claimant can perform at that lower exertional level.

In this case, there is no dispute that Baca's impairments produced limitations which prevented him from performing his past relevant work, which was at the medium exertional level.  Medium work is defined as,

> The regulations define medium work as lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing tup to 25 pounds.  <u>A *full range* of medium requires standing or walking, off  and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds.</u>  As in light work, sitting may occur intermittently during the remaining time.  Use of the arms and hands is necessary to grasp, hold, and turn objects, as opposed to the finer activities in much sedentary work, which require precision use of the fingers as well as use of the hands and arms.

The considerable lifting required for the *full range* of medium work usually requires frequent bending-stooping (Stooping is a type of bending in which a person bends his or her body downward and forward by bending the spine at the waist.)  Flexibility of the knees as well as the torso is important for this activity.  (Crouching is bending both the legs and spine in order to bend the body downward and forward.)  However, there are a relatively few occupations in the national economy which require exertion in terms of weights that must be lifted at times (or involve equivalent exertion in pushing or pulling), but are performed primarily in a sitting position, e.g., taxi driver, bus driver, and tank-truck driver (semiskilled jobs).  <u>In most medium jobs, being on one's feet for most of the workday is critical</u>.  Being able to do frequent lifting or carrying of objects weighing up to 25 pounds is often more critical than being able to lift up to 50 pounds at a time.

SSR 83-10, 1983 WL 31251, at *6 (emphasis added).  Thus, although Baca could only stand or walk for a total of approximately 4 hours in an 8-hour workday, nonetheless, the ALJ found Baca retained the RFC to perform "a limited range of medium work."  Specifically, the ALJ found,

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a limited range of medium work as defined in 20 CFR 404.1567(c) consistent with my hypothetical question as follows: The claimant can lift and/or carry no more than 50 pounds occasionally and no more than 25 pounds frequently, sit for 6 hours out of an 8-hour workday, <u>stand and/or walk for 4 hours out of an 8-hour work day, and is limited to a job that would allow him to sit and stand one time every 30 minutes</u>.

Tr. 18 (emphasis added).

At the administrative hearing, the ALJ posed the following questions to the VE.

ALJ:  No, no.  Forget his testimony.  You need to– you know, it has to be done in light of the limitations I've given you.  So, he needs to just– you know, the person in question, the hypothetical person in question needs to be in the kind of job that allows him to sit or stand one time every 30 minutes.  I mean, we're talking– we're not– you know, where the person is able, for instance, if they're sitting for 30 minutes, to get up, stand up and

6

stretch for a few minutes, and then, sit down or remain– you know.  It's a sit/stand option.

VE:     Yeah, I, I, I wouldn't take that as a sit/stand option, because I'm not sure how often he'd have to do it.  Further, the lifting in terms of the stocking would be– he mentioned, would be up to 80, 80 pounds–

ALJ:    Well, remember, though, I said, I said, with this– this hypothetical person is limited to 50 pounds occasionally, 25 pounds frequently.  So, that's what I limited.  That's the lifting and carrying.  I don't think that allows him to lift beyond 50 pounds, as I understand it.

VE:     That's, that's why I mentioned that that would be above– the way he described the job would be above his exertional level, Your Honor.

ALJ:    Okay.  Well, I guess my question is – so, I guess the answer is, then, no?

VE:     That's correct, and and that would be based on the, on the requirements for moving stock.

ALJ:    Okay.  What about being able to perform the machinist job as it is performed in the national economy?  In other words, okay, he can't do it the way he performed it, but in light of the hypothetical profile I've given you, he might be able to do it– or, rephrase that.  Could he do it the way it's performed in the national economy?

VE:     Yeah, there a number of, there are a number of machinist jobs that are classified as medium that are performed at that level including the, the DOT that I quoted, the part that was just the machinist part of the job.

ALJ:    Okay.  I guess my only, my only question here, though, is remember, <u>I've got him at, at, at standing and walking four out of every eight hours, so I, I would think, and you're the expert in this area, once, once I say four out of every eight hours, that, that means he</u>

7

<u>can't does that still keep him within a medium, or doesn't that– I mean, that changes it</u>

<u>somewhat, doesn't it</u>?

VE:     <u>It changes it</u>.  I think what I'm getting stuck on is the, the description he gave of how he

performed the job.

ALJ:    No, no, no.

VE:     Strictly, <u>strictly at a medium</u>—

ALJ:    Yeah.

VE:     – <u>you'd be standing most of the day</u>, Your Honor.  <u>In most medium jobs</u>.

ALJ:    Okay.  Well, let's – okay.

VE:     Unless you were in truck driving or jobs like that.  But you asked about machinists.

ALJ:    Yeah, well that's, that's what I'm, you know, that's what I'm asking right now.  Well,

let's, let's see if he could do any other kind of work; again at the very same profile that

I've given you: 50 pounds occasionally, 25 pounds frequently; sitting six out of every

eight hours; standing and walking **four out of every eight hours; with a sit/stand**

**option one time every 30 minutes**.

VE:     The–

ALJ:    Well, slow down.  I want you to assume the same hypothetical individual with those very

same functional restrictions.  I want you to further assume that this individual is the same

age and has the same vocational and educational background as our claimant.  Are there

any jobs in either the national or regional economies that such a hypothetical person

would be able to perform?

VE:     With, with your profile, **we're at the medium level**, and we'd have to have jobs that

would allow for a sit/stand option.  Examples are linen room attendant, which is DOT of

222.387-.030.  That's an unskilled job.  It's at an SVP two.  The region which we're

going to use is the entire state of New Mexico, has 3,500; nationally, 450,000.  I also

have an unskilled hand packer, which is a DOT of 920.587-018.  That's also at an SVP

two.  The region, again, is the entire state of New Mexico, shows 2,100; nationally,

350,000.

ALJ:   Do you have any other– I need one more example if you've got one.

VE:   Those are the ones that are **most likely** to allow for sit/stand options.  There's, there's–

many of the medium jobs are– that allow sitting are truck driver, but there's no option for

sit/stand.  Other delivery drivers.  Cooks and stockers are on their feet all day, as well as

cleaners, laundry workers, and kitchen helpers, Your Honor.

Tr. 57-59 (emphasis added).  In summary, the VE testified (1) most medium jobs required

standing most of the day; (2) the truck driver job was classified as medium and allowed for

sitting but there was no option for sit/stand; and (3) cooks, stockers, cleaners, laundry workers

and kitchen helpers were on their feet all day.

Significantly, the VE erred when he opined that standing and walking four out of eight

hours would still be at the medium level.  Under the regulations,  medium work "requires

standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday."

SSR 83-10, 1983 WL 31251, at *6.  Thus, the VE was looking at medium work that would allow

for a sit/stand option.  He failed to take into account that Baca was restricted to standing or

walking for 4 hours in an 8-hour workday.  Moreover, a review of the job descriptions of linen

room attendant and hand packer does not suggest any activities than can be performed sitting for

half of the day.  Thus, the ALJ erred in relying on the VE's testimony.  The ALJ's RFC

assessment, specifically the restriction that Baca could only stand or walk for 4 hours in an 8-

hour workday precludes performance of medium or light work as both require the ability to stand or walk for 6 hours in an 8-hour workday.

Therefore, Baca contends the ALJ should have found him disabled as a matter of law. Baca argues that the ALJ's RFC findings that he could stand and/or walk for only 4 hours out of an 8-hour workday and that he be allowed to switch position every 30 minutes preclude performance of both light and medium work since light work also requires the ability to stand and/or walk 6 hours out of an 8-hour workday.  *Id.*  Baca also contends that even within the sedentary range he would require a sit/stand option.  However, Baca points out that if he is restricted to sedentary work, considering his age, education and work history he would be found disabled under the grids.

Specifically, Baca argues that under Rule 201.06 he would be found disabled.  20 C.F.R. pt. 404, subpt. P, app. 2, §201.00, Table No. 1, Rule 201.06.  Rule 201.06 describes (1) an individual of advanced age, (2) a high school graduate or more, and (3) with previous work experience skilled or semiskilled– skills not transferable.  An individual to whom Rule 201.06 applies would be disabled as a matter of law.  Baca has been an individual of "advanced age" at all times relevant to his claim.  Baca is a high school graduate with a history of skilled work as a machinist.  Finally, the ALJ found Baca could not perform his past relevant work as a machinist and did not have skills transferable to sedentary work.  Thus, Rule 201.06 directs a finding of "disabled."

Baca further  argues that even if the ALJ had found him able to perform light level work, the grids would mandate a finding of disabled based on Rule 202.06.  20 C.F.R. pt. 404, subpt. P, app. 2, Table No. 2, Rule 202.06.  This rules describes (1) an individual of advanced age, (2) a high school graduate or more, (3) with previous work experience in the skilled or semiskilled

category but the skills are not transferable.  Rule 202.06 applies to Baca and also directs a finding of "disabled."

Based on the record, the Court finds that the ALJ did not apply the correct legal standard and his RFC finding is contrary to law and not supported by substantial evidence.  Because the record fully supports a determination that Baca was disabled as a matter of law and is entitled to benefits, "further administrative proceedings would only further delay the appropriate determination and award of benefits."  *Dixon v. Heckler*, 811 F.2d 506, 511 (10th Cir. 1987). Accordingly, the Court reverses the ALJ's decision and remands for an immediate calculation and award of benefits.

_____

**DON J. SVET**
**United States Magistrate Judge**